**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JEREMY JARVIS (#443106),** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-0388** |
| | ) | |
| **JAMES M. HOLLWAY, Warden,** | ) | **Judge Trauger** |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

Petitioner Jeremy Jarvis, a prisoner in state custody, filed a timely *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus (ECF No. 1), challenging the 2008 judgment of the Montgomery County Criminal Court convicting him on one count of second-degree murder and one count of attempted second-degree murder. The court appointed counsel, who filed an amended petition (ECF No. 22) that incorporates all the claims raised in the initial petition. The respondent filed an answer (ECF No. 23) in opposition to the amended petition, along with a copy of the underlying state-court record (ECF No. 21).

The matter is ripe for review, and this court has jurisdiction. 28 U.S.C. § 2241(d). Upon consideration of the amended petition, answer, and the state-court record, the court finds for the reasons set forth herein that the petitioner is not entitled to relief on the grounds asserted. Because a federal court must presume the correctness of a state court's factual findings unless the petitioner rebuts this presumption with "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and because the issues presented can be resolved with reference to the state-court record, the court further finds that an evidentiary hearing is not necessary. *See Schriro v. Landrigan*, 550 U.S. 464, 474 (2007) (holding that if the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, the district court is not required to hold an evidentiary hearing (citing *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998))). Jarvis's petition will be denied and this matter dismissed.

**I.      PROCEDURAL BACKGROUND**

On August 21, 2008, a Montgomery County jury found the petitioner guilty of the second-degree murder of Willard Ross, attempted second-degree murder of Jovan Dixon, reckless endangerment with a

dangerous weapon, and possession of a weapon with intent to go armed. (Trial Tr., ECF No. 21-5, at 71–73.) The trial court sentenced the petitioner on September 25, 2008 as a Range I, standard offender, to twenty-five years for the second-degree murder conviction, twelve years for the attempted murder conviction, two years for the felony reckless-endangerment conviction, and eleven months, twenty-nine days for the misdemeanor possession conviction. The trial court ordered the petitioner to serve the sentence for attempted second-degree murder consecutively to the sentence for second-degree murder, and to serve the remaining sentences concurrently with each other and with the second-degree murder sentence, for an effective sentence of thirty-seven years. (Judgments, ECF No. 21-1, at 21–22, 25–26.) The convictions and sentences were affirmed on direct appeal. *State v. Jarvis* ("*Jarvis I*"), No. M2008-02711-CCA-R3-CD, 2010 WL 4674271 (Tenn. Ct. Crim. App. Oct. 1, 2010), *perm. app. denied* (Tenn. Jan. 13, 2011).

On September 6, 2011, the petitioner filed a petition for post-conviction relief in the state trial court. (ECF No. 21-14, at 4.) The court appointed counsel, who filed an amended petition. (ECF No. 21-14, at 27.) After conducting a hearing at which the petitioner and his trial attorney testified, the trial court entered an order denying the petition. (ECF No. 21-14, at 37.) That decision was affirmed on appeal as well. *Jarvis v. State* ("*Jarvis II*"), No. M2013-01640-CCA-R3-PC, 2014 WL 2001048 (Tenn. Ct. Crim. App. May 14, 2014), *perm. app. denied* (Tenn. Sept. 19, 2014).

## II.    STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals succinctly summarized the facts presented at trial and relevant to these proceedings as follows:

> Petitioner and four others drove to Wal–Mart at approximately 1:00 p.m. on June 25, 2007. Petitioner was armed at the time. One of the passengers entered the store as Javon [sic] Dixon was exiting. There was a verbal confrontation with Dixon and racial slurs were exchanged. Dixon sat down in his vehicle and started the ignition. Petitioner exited his vehicle. Dixon pulled out a gun and began firing as he drove away. Petitioner ducked down and then reached inside his vehicle for his weapon. Petitioner fired several shots at Dixon's vehicle as he drove toward [a] fireworks stand [that was operating in the Wal–Mart parking lot] through the crowded parking lot. Petitioner fired his weapon at Dixon in the direction of the fireworks tent where Mr. Willard Ross was standing. Ross was killed by a bullet from Petitioner's gun.

*Jarvis II*, 2014 WL 2001048, at *1 (citing *Jarvis I*, 2010 WL 4674271, at *1–5).

The appellate court summarized the evidence presented at the post-conviction evidentiary hearing as follows:

At the post conviction hearing, trial counsel and Petitioner testified. Trial counsel had been in practice in criminal defense for over twenty-five years. He was retained to represent Petitioner and spent over one hundred hours on the case. He interviewed Petitioner multiple times in formulating a defense. He visited the scene and interviewed numerous witnesses and officers. Petitioner had made a statement to police describing the shooting at Dixon as "retaliation." Counsel agreed that his theory was self-defense because Petitioner was shooting back at Dixon, who shot at him first. Petitioner was charged with first degree murder and counsel's goal was to "convince the jury that my client wasn't guilty of felony murder or second degree murder." Counsel hired two other attorneys to help with legal research and to provide advice. He presented several theories to the jury, including mutual combat, in an effort to provide the jury with several alternatives to finding the petitioner guilty of the most serious charge of first degree murder.

Counsel admitted that his notes concerning the case did not include reference to Tennessee Code Annotated section 39-11-604, which precludes the use of self-defense as a defense when the use of force recklessly injures or kills an innocent third party, and that he was pursuing a defense of self-defense during the trial. Counsel admitted that during closing argument, he told the jury that Petitioner was acting in self-defense, and perhaps he was guilty of criminal negligence with regard to Mr. Ross. He testified he was trying to convince the jury to find something less than felony murder.

Petitioner testified that trial counsel came to see him at the jail a few times. He acknowledged receiving letters from counsel and that he told counsel what occurred on the day of the shooting. Petitioner testified he was not told of any plea offers until the day of trial and that he rejected that offer.

*Id.*, 2014 WL 2001048, at *2.

## III.    ISSUES PRESENTED FOR REVIEW

The petitioner raises the following claims for relief in the amended petition:

(1) that the evidence was insufficient to sustain the convictions for second-degree murder;

(2) that trial counsel was constitutionally ineffective in that he—

(a) failed to research the law and prepare an adequate defense;

(b) failed to provide an adequate defense at sentencing; and

(c) failed to pursue a plea agreement and to educate the petitioner regarding the merits of such an agreement; and

(3) that the state withheld material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

## IV.    STANDARD OF REVIEW

### A.    Exhaustion and Procedural Default

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may not entertain a petition for the writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is

not a jurisdictional requirement, it is a strictly enforced doctrine designed to promote comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[1] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose v. Lundy*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under AEDPA).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

**B.     Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this court's review of the state court's resolution of those issues remains quite limited. First, this court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Further, under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless

they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the claims raised in Thorne's petition for habeas relief.

**V.    DISCUSSION**

**A.    Sufficiency of the Evidence**

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court set forth the standard for challenges based on the sufficiency of the evidence, holding that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* This standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

In the context of a § 2254 petition, however, both the *Jackson* standard and AEDPA apply, as a result of which "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)); *see also Cavazos v. Smith*, 132 S. Ct. 2, 3–4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" (citation omitted)).

In this case, the petitioner, with reference to *Jackson*, argues that he was

> convicted of and sentenced for two crimes that shared the same requisite intent: the intent to shoot Mr. Dixon, and the "transferred intent" to kill Mr. Ross (the accidental victim). The way the jury reached this curious outcome demonstrates that the evidence was insufficient. The State's indictment accused Mr. Jarvis only of first degree murder of Mr. Ross, which required that the State prove that Mr. Jarvis act with premeditation to kill Mr. Ross. The jury received a jury instruction on the lesser included offense of second degree murder of Mr. Ross. That instruction required that the jury find that (1) the defendant unlawfully killed Willard Ross; and (2) that the defendant acted knowingly. However, the instruction defined knowingly as meaning "that a person acts with an awareness that his conduct is reasonably certain to cause the death of the alleged victim," Willard Ross.
>
> The evidence is insufficient to show that Mr. Jarvis knowingly killed Mr. Ross [and therefore] fails to prove that Mr. Jarvis was guilty of second degree murder. . . .

(ECF No. 22, at 10.)

Notably, the petitioner's argument makes no reference to the AEDPA standard: He argues that the evidence was insufficient to establish that he "knowingly" killed Mr. Ross, but he does not address the reasonableness of the state court's determination that the evidence was sufficient to support the verdict. In response, the respondent argues that (1) the claim is not exhausted because it was not "fully and fairly" presented to the state courts as a federal claim; the claim presented in the petitioner's direct appeal was instead premised entirely on state law; and (2) that the state court's resolution of this claim was not

unreasonable. This court finds that, regardless of whether the claim was properly exhausted,[2] the petitioner has not shown that the state court decision was unreasonable.

The state appellate court, in reviewing the sufficiency-of-the-evidence claim as it pertains to the second-degree murder conviction, correctly stated the controlling federal standard as established by *Jackson* and applied it to the facts before it, in light of the state law defining the charges of conviction. *See Jarvis I*, 2010 WL 4674271, at *6. The court found the claim to be without merit, as follows:

> Second degree murder is defined as "[a] knowing killing of another." T.C.A. § 39-13-210(a)(1). A person acts "knowingly" with respect to the result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. *Id.* § 39-13-302(b). . . .

> [B]ased on the discussions between the trial court and counsel which are included in the record, as well as counsel's closing argument, it is apparent that the trial court charged the jury with the lesser included offenses of voluntary manslaughter and criminally negligent homicide.

> "Criminally negligent conduct which results in death constitutes criminally negligent homicide." T.C.A. § 39-13-212. A person acts with criminal negligence

>> with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused's person's standpoint.

> *Id.* § 39-11-202(d). Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." *Id.* § 39-211(a).

> Thus, the difference between criminal negligence and second degree murder is that criminally negligent homicide has a lesser level of culpability. Second degree murder and voluntary manslaughter have the same mental state of knowing, but a voluntary manslaughter conviction depends on the existence of adequate provocation. Whether the act constitutes a knowing killing (second degree murder) or a killing due to adequate provocation (voluntary manslaughter) is a question for the jury.

> Viewing the evidence in a light most favorable to the State, Defendant [and his friends] drove to Wal-Mart at approximately 1:00 p.m. on June 25, 2007. Defendant was armed at the time. Ms. Harris [one of Defendant's friends] entered the store as Mr. Dixon was exiting. There was a verbal confrontation with Mr. Dixon, and racial slurs were exchanged. Mr. Dixon sat down in his blue Pontiac and started the ignition. Defendant exited the Expedition. Mr. Dixon pulled out a gun and began firing as he drove away. Defendant ducked down and then reached inside the Expedition for his weapon.

---

[2] The Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against a petitioner on the merits. *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

Defendant fired several shots at the Pontiac as it drove toward the fireworks stand through the crowded parking lot.

Based on our review, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant knowingly, and not with criminal negligence, fired his weapon at Mr. Dixon in the direction of the fireworks tent where Mr. Ross was standing. *See Millen v. State*, 988 S.W.2d 164, 168 (Tenn. 1999) (holding that if a defendant knowingly fires his weapon at a specific person, and an innocent bystander is killed, the element of intent as to the criminal liability for the death of the bystander is satisfied).

Although mutual combat is not a statutory defense, the facts and circumstances surrounding the killing occasioned by mutual combat may establish that the defendant was impassioned as a result of adequate provocation. The jury heard evidence and considered Defendant's theory of defense that he was provoked into engaging in gunfire with Mr. Dixon. Viewing the evidence again in a light most favorable to the State, a hostile verbal exchange occurred between Mr. Dixon and the men in the Expedition in the parking lot immediately prior to the shooting. Mr. Dixon sat down in his car, pulled out a gun, shot at the Expedition, and then drove away. Instead of getting back into the Expedition and leaving the area, Defendant reached into the Expedition, pulled out his gun, and fired several shots toward the retreating Pontiac in a parking lot crowded with shoppers. Defendant and his group remained in the parking lot after the shooting and tried to explain to the bystanders that the shooting was not Defendant's fault.

The jury was given the option of voluntary manslaughter as a lesser included offense and chose to reject the notion of provocation which was well within its prerogative. Based on our review, we conclude that the evidence is sufficient beyond a reasonable doubt to support Defendant's conviction of the second degree murder of Mr. Ross. . . .

*Id.* at *6–8 (most internal quotation marks and citations omitted).

The state court's resolution of the sufficiency argument relied almost entirely on state law, and "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Moreover, the state court's conclusion that the petitioner acted "knowingly," as defined by the statute, in killing Mr. Ross was not unreasonable based on the evidence in the record.

The petitioner insists, to the contrary, that the state presented no evidence to show that he "knowingly" killed the victim, Willard Ross, or even knew of his existence, as allegedly required by a jury instruction defining "knowingly" as meaning that "a person acts with an awareness that his conduct is reasonably certain to cause the death of the alleged victim." (ECF No. 22, at 10.) However, as the respondent points out, in Tennessee, a criminal defendant's "knowing" refers to the defendant's *conduct* and the possible *result* of that conduct. *See* Tenn. Code Ann. § 39-11-302(b) ("'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly

with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result."). Thus, in this case, the guilty verdict on the second-degree murder charge meant that the jury concluded that the petitioner knowingly shot into a crowded parking lot with the intent to kill and awareness that death could result from such conduct. *Cf. Millen v. State*, 988 S.W.2d 164, 168 (Tenn. 1999) (holding that the evidence was sufficient to support the verdict where it "establish[ed] that [the defendant's] conscious objective was to engage in the *conduct* as well as to achieve the *result* of killing Gray [the intended victim]" and therefore "demonstrate[d] that [the defendant] was guilty of premeditated and deliberate first degree murder, even though he killed an unintended victim").

The appellate court's adjudication of the sufficiency claim was not contrary to and did not involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the court. The petitioner is not entitled to relief on the basis of this claim.

### B. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment, a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* Again, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The petitioner here asserts that his trial counsel was ineffective for failing to (1) research the law and prepare an adequate defense; (2) provide an adequate defense at sentencing; and (3) pursue a plea agreement and educate the petitioner regarding the merits of such an agreement.

### (1) Failure to Research the Law and Prepare an Adequate Defense

In his habeas petition, as in his post-conviction appeal, the petitioner argues that his trial attorney was ineffective because he was ignorant of the law that applied to his client's case and that this ignorance prejudiced the entire defense. Specifically, the petitioner argues that counsel went to trial on a theory of self-defense, all the while ignorant of the fact that such a defense was, he claims, precluded by Tenn. Code Ann. § 39-11-604, at least with respect to the charge of murdering Mr. Ross. There is apparently no dispute as to the fact that defense counsel was entirely unaware of Tenn. Code Ann. § 39-11-604 until after trial began, at the earliest. The petitioner argues that, even after becoming aware of it, his attorney still argued self-defense to the jury in closing argument, furthering compounding his ineffectiveness and prejudicing the defense. He argues that he was prejudiced by his attorney's reliance upon a defense that was statutorily unavailable, because it meant he effectively offered no defense at all. The petitioner insists that his attorney could have argued instead that the petitioner did not kill with "knowledge" as required for a conviction of second-degree murder. (ECF No. 22, at 12.)

In addressing this claim, the Tennessee Court of Criminal Appeals first articulated and discussed at some length the standard for proving ineffective assistance of counsel as established by the Supreme Court in *Strickland. See Jarvis II*, 2014 WL 2001048, at *3–4. Having articulated the appropriate standard, the court then addressed the petitioner's claim and concluded that the petitioner had failed to prove that counsel's performance was deficient and that, even if it were, he had not established that the defense was prejudiced by the allegedly deficient performance. The court reasoned, in pertinent part, as follows:

> Petitioner was on trial for the attempted murder of Jovan Dixon and murder of Mr. Ross. The facts as relayed to trial counsel by Petitioner were that Petitioner was in the crowded parking lot of Wal–Mart and Jovan Dixon fired a pistol in his direction. Petitioner admitted to police that he "retaliated" and fired a pistol at Dixon. Petitioner testified at the post-conviction hearing he observed Dixon reach under the seat of his car and knew something was going on. Petitioner got out of his car with a pistol and, after Dixon fired, Petitioner returned fire. Petitioner testified: "[S]omebody was trying to take me out for no reason. And I was trying to defend myself, man."
>
> The fact that Dixon fired first in the direction of Petitioner presented an issue for the jury to determine whether Petitioner acted in self-defense as to Dixon. It was not ineffective assistance of counsel for trial counsel to pursue self-defense with the jury.

Petitioner asserts that if self-defense was argued as to the attempted murder of Dixon, it should not have been asserted as to the murder of Mr. Ross due to Tennessee Code Annotated section 39-11-604, of which trial counsel was unaware until trial began.

Tennessee Code Annotated section 39-11-604 states that "[e]ven though a person is justified under this part in threatening or using force or deadly force against another, the justification afforded by this part is unavailable in a prosecution for harm to an innocent third person who is recklessly injured or recklessly killed by the use of such force." The Sentencing Commission Comments state that "[t]his section provides that a defendant may be justified in using force against another person but criminally responsible if that use of force recklessly injures a third person. The underlying principle is that a defendant's culpability is to be measured independently for each victim. The section is designed to deter reckless conduct that could harm innocent third persons."

However, the jury rejected the theories of self-defense and reckless or negligent conduct. As stated in the opinion on direct appeal from the conviction:

Based on our review, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant knowingly, and not with criminal negligence, fired his weapon at Mr. Dixon in the direction of the fireworks tent where Mr. Ross was standing. . . .

. . . .

Even if trial counsel was unaware of the provisions of Tennessee Code Annotated section 39-11-604, which is designed to deter reckless conduct that could harm innocent third parties, the trial strategy used was not ineffective assistance of counsel. The post-conviction court found that if trial counsel's lack of knowledge of the statute was deficient, there was no showing that his lack of knowledge was below the range of competence demanded in this type of trial. That is, trial counsel's performance was not deficient. In addition, if it was deficient, there was no showing of prejudice. Petitioner certainly has not shown that if trial counsel had known about the statute that the result of the proceeding would have been different.

*Jarvis II*, 2014 WL 2001048, at *4–5.

The petitioner argues that the state court's determination that counsel's performance was not deficient was "bizarrely" based on its conclusion that it was not unreasonable to raise the self-defense theory with respect to the charge of attempted murder of Mr. Dixon even if not for the actual murder of Mr. Ross, and that the jury, in any event, rejected the self-defense claim. (ECF No. 22, at 11.) The petitioner further insists that "the state courts apparently believed that it was sufficient to base Mr. Jarvis's entire defense on a theory that only offered a potential legal defense to the lesser charge, virtually guaranteeing a conviction on the greater charge because trial counsel raised no defense." (*Id.*)

While the court agrees with the petitioner's assertion that "basic knowledge of the law and legal defenses—and the ability to research such law and defenses—are hallmarks of competent counsel" (*id.* (citing *Strickland v. Washington*, 466 U.S. at 688)), and that defense counsel arguably should have been

aware of a statute that had some bearing on his trial strategy, the petitioner has not shown that the lack of knowledge of this particular statute had any bearing on the case or would have made a difference in his strategy if he had known about it.

The statute at issue simply provides that self-defense is not a complete defense in the event that the otherwise justified use of force recklessly injures or kills an innocent third person. Tenn. Code Ann. § 39-11-604. Thus, as the petitioner argues, even if the jury had believed the petitioner's claim that he was acting in self-defense when he shot at Mr. Dixon and thus acquitted him altogether on the attempted murder charge, he could still have been found guilty of the reckless homicide of Mr. Ross. In this case, however, and contrary to the petitioner's suggestion, a jury verdict of reckless homicide would have been highly favorable to the defendant, involving a much shorter prison sentence than that entailed by a murder conviction (whether first-degree or second-degree murder). Moreover, self-defense was a viable theory of defense to the murder charge, which required proof that the defendant acted "knowingly." Counsel argued strongly that his client did not act with premeditation or "knowing," that he acted in self-defense, and that he therefore should not be found guilty of first-degree or second-degree murder. His strategy was at least partially successful: The petitioner was not convicted of first-degree felony murder, as charged. And, contrary to the petitioner's suggestion now, in arguing that he acted in self-defense, counsel did attempt to refute the state's argument that the petitioner acted "knowingly" for purposes of the murder charge. (*See* ECF No. 22, at 30 ("Attempted second degree murder, the State is telling you that Mr. Jarvis knowingly knew that his conduct was reasonably certain to cause the result. Again, he don't talk to you about self-defense or defense of others.").)

In short, the statute at issue did not bar raising self-defense as a defense to the charges of first-degree or second-degree murder. If defense counsel had been successful in persuading the jury that his client had acted in self-defense, then the petitioner could not have been found guilty of felony murder or second-degree murder. The fact that the petitioner was convicted of second-degree murder rather than first-degree murder means that counsel's strategy had some degree of success. The petitioner has not shown that his attorney's decision to argue self-defense amounted to deficient performance, nor has he shown prejudice resulting from his attorney's lack of familiarity with Tenn. Code Ann. 39-11-604. More to the point, the Tennessee court's conclusion that the petitioner had shown neither deficient performance

nor prejudice was not unreasonable under *Strickland*. The petitioner is not entitled to relief on the basis of this claim.

Insofar as the petitioner also argues that trial counsel failed to adequately consult with his client in preparation for trial, this claim is entirely premised on the presumption that counsel's self-defense trial strategy was inappropriate and that it "precluded trial counsel from competently educating his client with respect to the strength of his case and potential plea options." (ECF No. 22, at 12.) The petitioner has not established any facts in support of this claim, nor has he shown that it was exhausted in the state courts. Regardless of the procedural default, the court finds this claim to be utterly without merit since it is premised upon the false assumption that counsel was ineffective for attempting to establish the defense of self-defense at trial. This claim does not warrant relief either.

### (2) Failure to Provide an Adequate Defense at Sentencing

The petitioner argues next that consecutive sentencing on the second-degree murder and attempted murder convictions was "impermissible under Tennessee law" but that "trial counsel failed to object or to preserve this issue for appeal," that "appellate counsel failed to appeal this obvious issue," and that "post-conviction counsel failed to address this obvious trial-level ineffectiveness." (ECF No. 22, at 13.)

In other words, this ineffectiveness claim was never presented to the Tennessee state courts. Because there is no longer any procedure available under Tennessee law for the petitioner to present the claim in the Tennessee courts, *see* Tenn. Code Ann. §§ 40-30-102(a) (statute of limitations), 40-30-102(c) ("one petition" limitation), and 40-30-117 (restricting the filing of motions to reopen), the claim is deemed to be exhausted but procedurally defaulted. As such, the claim may not be considered on habeas review unless the petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

The petitioner here does not expressly acknowledge that the claim is procedurally defaulted, and he raises no argument at all for overcoming the procedural default, besides asserting that post-conviction counsel failed to raise this "obvious" claim in post-conviction proceedings. Until recently, of course, a

prisoner could not demonstrate cause to overcome a procedural default by claiming that he had received ineffective assistance of counsel during state post-conviction proceedings. Now, however, under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), "ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial." *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014) (citing *Martinez*, 132 S. Ct. at 1320). To show cause to overcome procedural default under *Martinez*, a petitioner must show that: (1) he has a substantial claim of ineffective assistance of trial counsel; and (2) that counsel in the petitioner's initial state collateral-review proceeding was nonexistent or ineffective. *Atkins v. Holloway*, 792 F.3d 654, 658 (6th Cir. 2015).

Although the petitioner makes some attempt to establish that the defaulted ineffective-assistance claim is "substantial" insofar as he refers to trial counsel's alleged error as "obvious trial-level ineffectiveness" and discusses the alleged sentencing error. The court nonetheless finds that the underlying claim as described by the petitioner is not substantial. Moreover, the petitioner makes no effort to establish that post-conviction counsel was "nonexistent or ineffective." The court finds that the petitioner has not overcome the procedural default.

### (3) Failure to Pursue a Plea Agreement and to Educate Petitioner About the Merits of a Plea

The petitioner argues that trial counsel admitted that he met with the prosecutor on several occasions to attempt to resolve the case with a settlement offer; trial counsel testified that he hoped to elicit a plea offer to voluntary manslaughter "or something along those lines for ten to twelve years." (ECF No. 22, at 15.) The state declined and denied ever making an offer to settle, though the petitioner testified at the post-conviction hearing that he was offered a plea deal of twenty-five years just before trial, which he refused.

The petitioner now asserts that trial counsel's unsuccessful efforts to elicit a more reasonable settlement offer from the state was directly attributable to his "erroneous purs[uit of] a theory of self-defense that was statutorily precluded." (*Id.*) The petitioner also asserts that his rejection of the state's twenty-five year offer (which the state denies making) occurred at a time "when his attorney believed that self-defense was a viable trial defense." (*Id.*) In sum, the petitioner argues that his trial attorney's "plea

negotiation strategy was incompetent and informed by fundamental legal error," resulting in an obviously prejudicial result: a thirty-seven year sentence. (*Id.*)

The petitioner raised an entirely different plea-related claim in the state-court proceedings: that trial counsel was ineffective for failing altogether to enter into plea negotiations with the state and, as a result, violated his duty under the United States Constitution. Post-conviction counsel acknowledged in his appellate brief, however, that the United States Supreme Court has never expressly held that a defense attorney who otherwise effectively represents her client has any obligation to initiate plea negotiations. (ECF No. 21-17, at 35.) Counsel nonetheless argued that "there is growing precedent for finding such a duty, and there is increasing likelihood that the United States Supreme Court will find such a duty under the Constitution when squarely presented with that question." (ECF No. 21-17, at 35.)

The post-conviction court found this claim to be without merit, concluding as a factual matter that evidence presented at the post-conviction hearing established that trial counsel did attempt to negotiate a settlement offer but that the state never made an offer prior to trial.[3] The court found that the petitioner failed to establish that his attorney's conduct fell below the prevailing professional standard or that the petitioner was prejudiced by any alleged deficiency. The state court's factual determinations are supported by the record, and its legal conclusions were not unreasonable or contrary to clearly established law.

The claim as presented in this court is procedurally defaulted, having never been presented on this precise theory to the state court. *See Wong v. Money*, 142 F.3d 313, 321–22 (6th Cir. 1998) ("A constitutional claim presented to the federal courts that does not rest on the same theory as was presented to the state courts is procedurally defaulted."). The petitioner has not established cause or prejudice to overcome the procedural default. Regardless, again because the argument is premised upon the erroneous presumption that counsel's performance was deficient insofar as he relied on a defense strategy of establishing that the petitioner acted in self-defense, the claim is without merit and would not warrant relief even if it had been properly exhausted.

---

[3] There was a factual dispute as to whether the state made a twenty-five year settlement offer just before trial. The state denies making the offer. The petitioner states that he refused the offer. The post-conviction court appeared to resolve this factual dispute in favor of the state, but it is not material here.

### C.    The Alleged *Brady* Violation

Finally, the petitioner asserts that the state withheld material, exculpatory evidence in violation of the petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). He states, in entirely conclusory fashion, that he "intends to seek access to the police and prosecution files in this case, but has been unable to do so in time to investigate Mr. Jarvis's *Brady* claim. However, counsel reasonably believes that discovery in this case will reveal material, exculpatory evidence withheld by the State and state actors." (ECF No. 22, at 16.)

This claim was not raised in state post-conviction proceedings and is therefore procedurally defaulted. The petitioner presents no basis for overcoming the procedural default. Moreover, Rule 2(c) of the Rules Governing § 2254 Cases provides that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." The rule is even "more demanding" than Rule 8(a) of the Federal Rules of Civil Procedure, which requires in "ordinary civil proceedings" that the complaint "provide 'fair notice of what the plaintiffs claim is and the grounds upon which it rests.'" *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also McFarland v. Scali*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in part) ("[T]he habeas petition, unlike a complaint, must allege the factual underpinnings of the petitioner's claims."). The petitioner's failure to satisfy the pleading requirements of Rule 2(c) alone provides an appropriate basis for dismissal. *Cf. Creech v. Taylor*, No. 13-1 65, 2013 WL 6044359, at *3 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support").

Because the amended petition does not include sufficient specific facts to support the petitioner's *Brady* claim, both the court and the respondent are precluded from addressing the merits of the claim. Dismissal of this claim is appropriate on the basis that it is procedurally defaulted and insufficiently pleaded.

## VI.    CONCLUSION

For the reasons set forth herein, Jeremy Jarvis's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

The court finds that the petitioner has not made a substantial showing of the denial of a constitutional right with respect to his claims and that they do not merit further review. The court will deny a COA.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge